UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-23046-CIV-COHN-SELTZER

PLEASANT VALLEY BIOFUELS, LLC,

    Plaintiff,

v.

SANCHEZ-MEDINA, GONZALEZ, QUESADA,
LAGE, CRESPO, GOMEZ & MACHADO, LLP,

    Defendant,

v.

QUEST CORPORATION, STEVEN
WORTON, and LUCAS FORD,

    Third-Party Defendants.
_____/

**SANCHEZ-MEDINA, GONZALEZ, QUESADA, LAGE, CRESPO, GOMEZ & MACHADO, LLP'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

    Defendant and Third Party Plaintiff, Sanchez-Medina, Gonzalez, Quesada, Lage, Crespo, Gomez & Machado, LLP ("SMGQ"), by and through its undersigned counsel, files this statement of undisputed material facts pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1. This statement is being filed contemporaneously with, and in support of, SMGQ's Motion for Summary Judgment.

    1.    Pleasant Valley Biofuels, LLC ("PV Biofuels"), is an Idaho Limited Liability Company, which specializes in the production of biofuels. ("Commitment Letter," attached to the Affidavit of Roland Sanchez-Medina as Exhibit B, p. 1).

    2.    Quest Capital Finance Corporation ("Quest"), is a Nevada Corporation, which was to provide financing to Pleasant Valley Biofuels in 2011. (*Id.*).

    3.    SMGQ is a Florida law firm based out of Coral Gables, Florida, that served as an escrow agent for the loan transaction entered into by PV Biofuels and Quest. (Commitment

1

Letter, p. 3; "Escrow Agreement" attached to the Affidavit of Roland Sanchez-Medina as Exhibit A, p. 1).

## I.   THE UNDERLYING LOAN TRANSACTOIN

4.   In 2011, PV Biofuels was seeking financing from Quest to expand its business into renewable diesel. (Deposition Transcript of Jonathan Adamson ("Adamson Tr."), attached hereto as Ex. 1, 52:13-53:8; SMGQ000046-47 ("Letter of Intent"), attached hereto as Ex. 2, p. 1).

5.   On May 27, 2011, Quest and PV Biofuels executed a Letter of Intent which provided the financing arrangements for the loan transaction, some of which included that the loan amount was to be for $7,000,000, a $280,000 down payment was required for the loan, and Quest required a Standby Letter of Credit that it would be responsible for obtaining as collateral for the loan. (Letter of Intent, pp. 1-2).

6.   The purpose of the $280,000 down payment was for Quest's purchase of a Bank Instrument, otherwise known as a Standby Letter of Credit, which was required to fund PV Biofuels' loan, and without which, Quest could not provide financing to PV Biofuels. (Affidavit of Lucas Ford ("Ford Aff."), attached hereto as Ex. 3, ¶6; PVB00019, attached hereto as Ex. 4; PVB00207, attached hereto as Ex. 5; Adamson Tr., 112:1-113:2).

7.   Specifically, Quest's ability to obtain to financing for loans like PV Biofuels was premised on its ability to obtain a cash-backed Standby Letter of Credit as secondary or default collateral for the loan. The Bank Instrument allowed Quest to finance PV Biofuels' loan by equitability subrogating its rights in PV Biofuels' secured collateral to a Standby Letter of Credit Provider. Accordingly, PV Biofuels' Deposit was necessary to procure a Standby Letter of Credit. (PVB00207, Ex. 5).

## II.   THE AGREEMENTS GOVERNING THE PARTIES' LOAN TRANSACTION

### A.   The Escrow Agreement

8.   On September 1, 2011, Quest, PV Biofuels, and SMGQ executed an Escrow Agreement. (Escrow Agreement, p. 3).

9.   The Escrow Agreement was signed by Steven Worton, President and CEO of PV Biofuels, Lucas Ford, Chief Operations Officer of Quest, and Roland Sanchez-Medina Jr. (Escrow Agreement, p. 3).

10. Roland Sanchez-Medina, Jr. was the authorized representative of SMGQ to execute the Escrow Agreement on behalf of SMGQ. (Affidavit of Roland Sanchez-Medina Jr. ("Sanchez-Medina Aff."), attached hereto as Ex. 6, ¶¶1-7).

11. The Escrow Agreement was a standard agreement that Quest had used for all of its transactions. (Ford Aff., ¶2).

12. Pursuant to the terms of the Escrow Agreement, PV Biofuels was to "deposit Four Percent (4%) or Two Hundred Eighty Thousand and 00/11 Dollars ($280,000 USD) (the "Escrow Deposit") of the face value of the Bank Instrument with [SMGQ] pending [Quest's] background check, due diligence, and loan approval process." (Escrow Agreement, p.1).

13. Section 1.A of the Escrow Agreement set forth the following terms and conditions regarding SMGQ's delivery of the Deposit:

> The Escrow Deposit shall be held in escrow until Lender confirms in writing to the Borrower and the Escrow Agent that the Loan is approved and is not subject to any contingencies; that all loan or transaction documents have been prepared and are fully executed and held in a pre-closing escrow by Lender; that first draw of the funds for the Loan are now available and will be wire transferred to the Borrower upon Lender's receipt of the Bank Instrument; and that there are no impediments to proceeding with and closing the Loan. Lender will issue written confirmation (the "Commitment Letter") that each of the requirements outlined above have been satisfied. A signed copy of the formal funding Commitment Letter ("Commitment" herein) by both Borrower and Lender will be provided by fax or e-mail to the Escrow Agent. *Escrow Agent agrees to follow the instructions of the release of funds in the mutually agreed upon funding Commitment by Borrower and Lender.*

(Escrow Agreement, p.1) (emphasis added).

14. At the time of execution of the Escrow Agreement, it was Quest and SMGQ's understanding and intent that pursuant to section 1.A of the Escrow Agreement, SMGQ was required to follow the instructions regarding the release of the Deposit to be provided in a mutually agreed upon Commitment Letter executed by PV Biofuels and Quest. (Ford Aff., ¶10-11; Sanchez-Medina Aff., ¶8).

15. Requiring SMGQ to follow the instructions in the Commitment Letter regarding the release of the Deposit was standard practice for Quest's transactions involving escrow agents. (Ford Aff., ¶10-11).

16. The explicit terms contracted to and outlined in the Escrow Agreement did not require SMGQ to independently look into the sufficiency of the conditions of the loan

3

transaction or documents exchanged between Quest and PV Biofuels nor did the terms require SMGQ to send independent notification to PV Biofuels once it released the Deposit. (Escrow Agreement p.1).

17. In addition to the terms governing the responsibilities of SMGQ as escrow agent, the Escrow Agreement contained an indemnification and hold harmless provision which sets forth the following terms:

> [Plaintiff and Quest], their officers, directors, shareholders, managers, agents and employees hereby indemnify and hold Escrow Agent harmless against any loss, liability, damage, cost or expense, including reasonable attorneys' fees, (a) related in any way to Escrow Agent's acting upon any notice, request, waiver, consent, receipt or other paper or document believed by Escrow Agent to be signed by Principals or any other proper person, and (b) incurred in connection with any act or thing done hereunder.
>
> Escrow Agent shall not be liable for any error or judgment or for any act done or step taken or omitted by it in good faith or for any mistake of fact or law or for anything which Escrow Agent may do or refrain from doing in connection herewith, except its own gross negligence or willful misconduct.

(Escrow Agreement, p. 5).

18. The Escrow Agreement further provides that,

> In consideration of acceptance of this appointment by Escrow Agent, [Plaintiff and Quest] agree to indemnify and hold Escrow Agent harmless as to any liability incurred by Escrow Agent to any person, firm or corporation by reason of its having accepted same or in carrying out any of the terms hereof, and to reimburse Escrow Agent for all its expenses, including among other things, counsel fees and court costs incurred by reason of its position or actions taken pursuant to these Escrow Instructions. [Plaintiff and Quest] hereby agree that the Escrow Agent shall not be liable to any of them for any actions taken by Escrow Agent pursuant to the terms hereof.

(Escrow Agreement, p. 5).

19. Accordingly, under the terms of the Escrow Agreement, PV Biofuels, Steven Worton, Quest, and Lucas Ford agree to indemnify and hold SMGQ harmless for any actions taken in good faith in connection with the terms of the Escrow Agreement except for SMGQ's gross negligence. (Escrow Agreement, p. 5; Deposition Transcript of Steven Worton ("Worton Tr."), attached hereto as Ex. 7, 183:12-184:15).

**B. The Commitment Letter**

20. On September 13, 2011, Quest sent a Commitment Letter to PV Biofuels setting forth the terms and conditions of the commercial loan arrangement. (Commitment Letter, p. 1; PVB 00348, attached hereto as Ex. 8).

21. On September 21, 2011, Quest and PV Biofuels executed the Commitment Letter. (Commitment Letter, pp. 16-17).

22. The Commitment Letter stated that the terms contained therein "superseded all prior correspondence, commitments, and oral and other communications relating to financing arrangements between Borrower and Lender." (Commitment Letter, p. 1).

23. The Commitment Letter further stated that it "constitute[d] the entire agreement of the Parties with respect to the Project and Facility hereof, superseding all prior agreements, actions, arrangements, discussions or understandings, oral, or written [and] [i]n the event of conflicts of any kind between the contents of this Commitment and any other statement, or other document, the Commitment shall take precedence." (Commitment Letter, p. 5).

24. The Commitment Letter set forth the following pertinent terms and conditions regarding the loan transaction and the Deposit:

> Loan Amount: Seven Million and 00/11 Dollars ($7,000,000.00 USD). Two Hundred Eighty Thousand and 00/100 Dollars ($280,000.00 USD) is the Deposit equal to Four Percent (%4) of the Loan Amount.
>
> Collateral: The Lender requires a priority perfected First Lien on all asset Holdings of Borrower and an Irrevocable Standby Letter of Credit ("SBLC" or "Bank Insturment" herein) . . . that is acceptable by Lender and to be obtained by Lender . . . .
>
> ***
>
> Conditions: The Conditions Precedent Lending is as follows:
>
> ***
>
> E. A Verifiable, Irrevocable, One Hundred Percent (100%) callable and cash back Bank Instrument . . . that is acceptable by Lender and to be obtained by Lender using the Four Percent (4%) *Deposit paid by the Borrower upon execution of this Commitment.* Lender agrees that Lender will not disburse the Deposit to acquire the Bank Instrument until such time as Borrower has met all of the conditions of this Commitment to the satisfaction of the Lender, Lender has approved the Loan and there are no other conditions to close except for obtaining the Bank Instrument. Until such time as the lender obtains the Bank Instrument, the Deposit shall be refundable to Borrower, except in the vent of a default by Borrower under this Commitment.

(Commitment Letter, p. 1-2).

25. Page three (3) of the Commitment Letter sets forth the following instruction regarding the Deposit:

> Deposit: Borrower has deposited Two Hundred Eighty Thousand and 00/100 Dollars ($280,000.00 USA) ("Deposit") equal to Four Percent (4%) of the Loan with Sanchez-Medina, Gonzalez, Quesada, Lage, Crespo, Gomez & Machado, LLP, a limited liability partnership organized under the laws of Florida ("Escrow Agent" herein) . . . that is specific for the aforementioned Commercial Loan pertaining to this Commitment that is One Hundred Percent (100%) refundable until such time as Lender verifies, approves and obtains the issuance of the Bank Instrument and there are no contingencies to funding Loan. *Escrow Agent shall release deposit, per Lender's instructions, for the benefit of the Borrower as final payment for the Bank Instrument and release of the first draw to Borrower.* Deposit will not be refunded if the Loan does not fund in Forty Five (45) Business Days, from both parties signing of this Commitment, solely due to Borrower's default or fraud.

(Commitment Letter, p. 3).

26. It was Quest's understanding and intent that the provision regarding the Deposit on page three (3) of the Commitment Letter was to serve as the parties' instruction to SMGQ to release the Deposit, which was further in accordance with the terms of section 1.A of the Commitment Letter. (Ford Aff., ¶¶13-14).

27. The Commitment Letter further provided the following regarding PV Biofuels' Commitment Fee:

> Simultaneously with the acceptance by the Borrower of this funding Commitment, a refundable Commitment fee equal to One Percent (1%) of the Loan Amount will be due to Lender, and to be retained by Lender as compensation for the funding Commitment. The Commitment Fee is part of the Four Percent (4%) Deposit and not in addition thereto.

(Commitment Letter, p. 3).

28. The Commitment Letter further provided that:

In the event of the Parties default under this Commitment, which is defined as the failure to materially perform as stated in the Commitment, [Quest] shall refund the Deposit received and retained by [Quest].

(Commitment Letter, p. 6).

### III. SMGQ'S DISBURSEMENT OF THE DEPOSIT TO QUEST

29. On September 7, 2011, SMGQ informed Steven Worton by electronic correspondence that PV Biofuels' Deposit had been received by SMGQ. (SMGQ 000106-107, attached hereto as Ex. 9).

30. On September 21, 2011, Joshua Estes (Quest's Business Development Director) e-mailed SMGQ, copying Steven Worton and Lucas Ford on that correspondence, providing a copy of the fully executed Commitment Letter for the commercial loan between PV Biofuels and Quest. (Sanchez-Medina Aff., ¶9; Exhibit B to Affidavit of Roland Sanchez-Medina).

31. Upon receipt of the fully executed Commitment Letter, SMGQ confirmed that the Commitment Letter was executed by both PV Biofuels and Quest and reviewed the entirety of the contents of the Commitment Letter. (Sanchez-Medina Aff., ¶9-10; Commitment Letter).

32. Pursuant to section 1.A of the Escrow Agreement, SMGQ reviewed the provision regarding the Deposit on page three (3) of the Commitment Letter in order to ascertain the instructions regarding the Deposit, and determined that the Commitment Letter instructed that, "Escrow Agent shall release Deposit, per Lender's instructions." (Sanchez-Medina Aff., ¶11).

33. SMGQ understood in good faith that the instruction, which stated, "Escrow Agent shall release Deposit, per Lender's instructions" was SMGQ's authorization to release the Deposit to Quest and that the directive in the Commitment Letter required SMGQ to release the Deposit. (Sanchez-Medina Aff., ¶11-13).

34. That same day, after SMGQ received the executed Commitment Letter from Joshua Estes, SMGQ received an e-mail from Lucas Ford which had attached to it the executed Commitment Letter, wiring instructions, and a letter, which stated that the loan for PV Biofuels was approved, not subject to any contingencies, that the letter was SMGQ's authorization to release escrow, and that SMGQ was to wire the funds pursuant to the attached wiring instructions (Exhibit C attached to the Affidavit of Roland Sanchez-Medina).

35. The e-mail from Lucas Ford was sent on behalf of Quest and was sent pursuant to the provision in the Commitment Letter regarding the Deposit, which instructed SMGQ to release the Deposit per Quest's instructions, and the Escrow Agreement. (Ford Aff., ¶18; Commitment Letter).

36. Based on the instructions contained in the fully executed Commitment Letter requiring SMGQ to release the Deposit to Quest, and the e-mail from Lucas Ford confirming

7

authorization to disburse and providing the wiring instructions, SMGQ released the Deposit to Quest on September 27, 2011. (Sanchez-Medina Aff., ¶15-18).

37. When it released the Deposit to Quest, SMGQ relied in good faith on the parties' agreed upon instructions in the Escrow Agreement, the Commitment Letter, and the e-mail from Lucas Ford. (Sanchez-Medina Aff., ¶18).

38. Ultimately, the loan transaction between PV Biofuels and Quest failed to close, and, to date, Quest has not returned the Deposit to PV Biofuels. (Complaint, DE #1).

39. The Commitment Letter set forth the following terms governing how PV Biofuels and Quest were to resolve their disputes arising out of the Commitment Letter:

> Borrower and Lender mutually agree that any controversy, dispute, or claim of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this Commitment and any aforementioned or forthcoming documents hereunder, shall be resolved and decided exclusively by binding arbitration.
> …
> The intent of this provision is for the Parties to forfeit and waive the right to file a lawsuit in court, the right to a jury trial, and the rights to appeal arising from such a lawsuit.
> …
> Further, the Parties agree to resolve any disputes between themselves privately or by a mutually agreed upon Expert, as set forth herein; in the event Borrower publishes adverse or negative comments or information about Lender, Borrower shall forfeit the entire Deposit, and Lender may recover damages against Borrower in double the amount of the Deposit for engaging in public adverse or negative publicity rather than private dispute resolution.

(Commitment Letter, p. 6).

IV. **ATTORNEY'S FEES INCURRED BY SMGQ**

30. On May 14, 2012, PV Biofuels filed a lawsuit against Quest and SMGQ in the United States District Court for the District of Idaho, Eastern Division, Case No. 4:12-cv-00229-REB, asserting identical claims against SMGQ that it has asserted in the current action. (Exhibit 2 attached to SMGQ's Request for Judicial Notice filed concurrently herewith).

31. SMGQ was dismissed from that action on December 6, 2012 for lack of personal jurisdiction. (Exhibit 5 attached to SMGQ's Request for Judicial Notice filed concurrently herewith).

32. As a result of defending against the lawsuit brought against it in the District of Idaho, SMGQ incurred $8,077.45 in reasonable attorney's fees. (Sanchez-Medina Aff., ¶19-22; Exhibit D Attached to Affidavit of Roland Sanchez-Medina).

33. As a result of defending against the current litigation, as of April 1, 2014, SMGQ has incurred $64,500.98 in reasonable attorneys' fees. (Affidavit of Joan Carlos Wizel, attached hereto as Ex. 10, ¶8).

34. PV Biofuels never filed for arbitration against Quest. (Worton Tr. 180:9-20).

Dated: April 30, 2014.                     Respectfully submitted,

                                           s/ Rachel A. Lyons
                                           Onier Llopiz (FBN 579475)
                                           ol@lydeckerdiaz.com
                                           Joan Carlos Wizel (FBN 37903)
                                           jcw@lydeckerdiaz.com
                                           Rachel A. Lyons (FBN 105347)
                                           rlyons@lydeckerdiaz.com
                                           LYDECKER│DIAZ
                                           1221 Brickell Avenue, 19th Floor
                                           Miami, Florida 33131
                                           Telephone: (305) 416-3180
                                           Facsimile:  (305) 416-3190

                                           *Attorneys for Sanchez-Medina, Gonzalez,
                                           Quesada, Lage, Crespo, Gomez & Machado LLP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 30, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

                                           s/ Rachel A. Lyons
                                           Rachel A. Lyons (FBN 105347)

## SERVICE LIST

Jonathan Pollard
Jonathan Pollard, LLC
401 E. Las Olas Blvd. #1400
Fort Lauderdale, FL 33301
jpollard@pollardllc.com
*Attorney for Plaintiff Pleasant Valley Biofuels, LLC and Third-Party Defendant Steven Worton*

Quest Corporation
c/o Aaron Shoaf, Silver Sheild Services, Inc.
P.O. Box 3540
Silver Springs, NV 39429
*Third-Party Defendant*

Lucas Ford
3568 N. Serenity Ave.
Post Falls, ID 83854
*Third-Party Defendant*